UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

BAHJI AMELIA ADAMS,       :
                       :
    Plaintiff,         :
                       :
       v.          :   Case No. 2:13-cv-10
                       :
KEITH HORTON, Commissioner of :
the Georgia Department of   :
Human Services, GEORGIA     :
DIVISION OF CHILD SUPPORT   :
SERVICES, DAVE YACAVONE,    :
Commissioner of the Vermont :
Department of Children and  :
Families, VERMONT OFFICE OF  :
CHILD SUPPORT,          :
                       :
    Defendants.        :

## OPINION AND ORDER

Plaintiff Bahji Amelia Adams brings this action claiming
Defendants have denied her due process and violated her rights
under the Americans with Disabilities Act ("ADA") and
Rehabilitation Act.  Now before the Court are motions to dismiss
filed by Defendants Keith Horton, Commissioner of the Georgia
Department of Human Services ("Georgia DHS"), Dave Yacavone,
Commissioner of the Vermont Department of Children and Families
("DCF"), and the Vermont Office of Child Support ("OCS").  The
motions raise several arguments for dismissal, including lack of
personal jurisdiction over Commissioner Horton, lack of subject
matter jurisdiction, Eleventh Amendment immunity, and mootness.
For the reasons set forth below, the motions to dismiss are
**granted** and those Defendants are **dismissed** without prejudice.

### Factual Background

The Amended Complaint alleges that Ms. Adams is disabled, and that the failure of courts and government officials to accommodate her disabilities has caused her financial harm. Her disabilities are the result of a 2003 automobile accident in which she suffered a traumatic brain injury. A psychological evaluation conducted in 2005 concluded that Ms. Adams is impaired in her ability to follow directions, perform multiple tasks, work at a reasonable pace, and function interpersonally.[1] She also allegedly suffers from chronic lower back pain, cervical spine pain, and migraines.

In August 2005, Ms. Adams filed a complaint in Georgia Superior Court seeking a divorce from her husband, Adam George. In the course of that proceeding, Ms. Adams, at times proceeding *pro se*, made requests for accommodations because of her inability to process the information required for litigation. She alleges that the state court failed to address her requests and never properly considered her need for accommodations. In November 2007, the state court awarded sole legal and physical custody of the couple's son to Mr. George and ordered Ms. Adams to pay child support in the amount of $601 per month.

Ms. Adams subsequently filed suit against various parties,

---

[1]   Ms. Bryant initiated this case *pro se*, but in light of her representation that she is "legally incompetent" the Court appointed counsel pursuant to Fed. R. Civ. P. 17(c).

including her ex-husband and state officials, in the United States District Court for the Northern District of Georgia. *See Adams v. Georgia,* 2007 WL 4979007, at *1 (N.D. Ga. Nov. 27, 2007); *Adams v. Georgia*, 2008 WL 649179, at *1 n.1 (N.D. Ga. Mar. 5, 2008); *Adams v. State of Georgia*, No. 1:08-cv-280 (N.D. Ga. June 30, 2008)*.* Her claims included challenges to the state court proceedings on the basis of due process and ADA violations. Each of those claims was dismissed.

Despite her physical and mental impairments, Ms. Adams has been able to work as a flight attendant. She began work for Comair in November 2007, and continued until her furlough in December 2008. She joined Comair again in July 2010, where she worked until a second furlough in January 2012.

In August 2010, Ms. Adams discovered that she was missing her passport. When she tried to obtain a replacement, she learned that in June 2009 the State of Georgia had certified her to the U.S. State Department's Passport Denial Program due to her child support arrearage. The Passport Denial Program is a joint venture by the state and federal governments, and can be applied to persons owing child support in an amount exceeding $2,500. In Georgia, the program is implemented by the state Division of Child Support Services ("Georgia DCSS").

Ms. Adams claims that she did not receive timely notice from the State of Georgia with respect to her certification to the

3

Passport Denial Program, and that Georgia's procedures for implementing passport denial do not take into consideration a person's disabilities or need for accommodations.  She ultimately found her passport, but continued to pursue the matter of certification because her passport was set to expire in 2012.

In September 2010, Ms. Adams forwarded a letter from her employer to the Georgia DCSS explaining that her employment required possession of a valid passport.  Georgia's procedures for implementing the Passport Denial Program allegedly provided an exemption where a passport is necessary in order to generate income.  The Amended Complaint alleges that Georgia state officials initially failed to act upon Ms. Adams's inquiry.  The Amended Complaint further alleges that because of the status of her passport, she was unable to obtain work as a flight attendant after September 2012.

In January 2013, the Georgia DCSS informed Ms. Adams that if she disagreed with the stated debt amount she could request an administrative hearing.  Because of the narrow grounds for seeking review, Ms. Adams did not request a hearing.

Ms. Adams moved to Vermont in 2010.  In March 2013, the Vermont OCS filed a Registration of Foreign Support Order to enforce the Georgia Superior Court's child support order.  The OCS also notified Ms. Adams of her child support arrearage and its own intent to certify her to the Passport Denial Program.

4

The Georgia DCSS ceased its enforcement activities in December 2013, and the Vermont OCS is currently the only agency enforcing Ms. Adams's child support obligations.

Ms. Adams filed suit in this Court on January 16, 2013.  On May 14, 2013, a Vermont Superior Court registered the Georgia child support order and ruled that if Ms. Adams made a $500 payment toward her arrearage, her passport restrictions would be released.  Ms. Adams obtained a new passport in October 2013.

The Amended Complaint sets forth claims under the ADA, Section 504 of the Rehabilitation Act, and the Due Process Clause.  In Count I, Ms. Adams alleges that the Georgia DCSS and its Director Keith Horton failed to take her disabilities into account when they certified her to the Passport Denial Program. By failing to modify their procedures or provide other accommodation, those defendants allegedly deprived Ms. Adams of the opportunity to gain meaningful employment.  In Count II, she claims that the Vermont OCS and Commissioner Yacavone similarly failed to take her disabilities into account.  Count III claims that the Georgia DCSS and Commissioner Horton failed to provide due process before certifying Ms. Adams to the Passport Denial Program.  For relief, the Amended Complaint seeks an injunction on any further denials, revocations, or restrictions on Ms. Adams's passport; an injunction on further certification to the Passport Denial Program without considering the need for

5

reasonable accommodations; judgment against the Georgia DCSS in the amount of $100,000; and attorney's fees.

## Discussion

### I.   Vermont Defendants' Motion to Dismiss

Defendant Yacavone, sued in his official capacity as Commissioner of DCF, and OCS (collectively "Vermont Defendants") have moved to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  Their Rule 12(b)(1) argument is that Ms. Adams's claims are moot, and that both the domestic relations exception to federal jurisdiction and the *Rooker-Feldman* doctrine prohibit the Court from considering her claims.  Under Rule 12(b)(6), they argue that the Amended Complaint fails to state a claim for relief under the ADA, the Rehabilitation Act, and the Due Process Clause.

A court should grant a Rule 12(b)(1) motion to dismiss if it is not authorized by statute or the Constitution to adjudicate the plaintiff's claims.  *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  The party asserting subject matter jurisdiction has the burden of proving its existence by a preponderance of the evidence.  *Id.*  In determining whether subject matter jurisdiction exists, the court may look to evidence outside the complaint.  *See Kamen v. Amer. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986).

6

A Rule 12(b)(6) motion challenges the sufficiency of the allegations in the complaint. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). To survive such a motion, the complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

The Vermont Defendants argue that Ms. Adams's claims against them are moot because she is seeking purely injunctive relief and her passport has been restored. The Amended Complaint requests "injunctive and declaratory relief to obtain reasonable accommodations and modifications to the [passport denial] program, as permitted under the statute, to avoid discrimination in the ongoing implementation of the Passport Denial Program." ECF No. 27 at 20 (request for relief under Count II of the Amended Complaint). Accordingly, Ms. Adams is seeking not only a new passport, but also changes to the certification process to allow for reasonable accommodations.

"A case is deemed moot where the problem sought to be

7

remedied has ceased, and where there is "no reasonable
expectation that the wrong will be repeated.'" *Prins v.
Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996) (quoting *Preiser v.
Newkirk*, 422 U.S. 395, 402 (1975)).  Ms. Adams submits that her
claim against the Vermont Defendants is not moot because she
might be denied reasonable accommodations with respect to a
future passport application.  This argument invokes the "capable
of repetition, yet evading review" exception to the mootness
doctrine.  *See FEC v. Wisc. Right to Life, Inc.*, 551 U.S. 449,
462 (2007).

The "capable of repetition, yet evading review" exception
applies when (1) the challenged action is too short in duration
to be fully litigated prior to its cessation or expiration, and
(2) there is a reasonable expectation or a demonstrated
probability that the controversy will recur.  *United States v.
Quattrone*, 402 F.3d 304, 309 (2d Cir. 2005) (citing
*Press-Enterprise Co. v. Superior Court of California for
Riverside County*, 478 U.S. 1, 6 (1986)).  "The heavy burden of
persuading the court that the challenged conduct cannot
reasonably be expected to start up again lies with the party
asserting mootness." *Friends of the Earth. Inc. v. Laidlaw
Envtl. Services (TOO), Inc.*, 528 U.S. 167, 189 (2000).

With respect to the first prong of the exception, the
Complaint does not set forth enough detail about the time lines

involved in a passport denial for the Court to determine whether all denials will necessarily evade review.  In this case, it appears that Ms. Adams was able to obtain review and relief in state court, but that she may have suffered harm in the form of unemployment prior to receiving that relief.  Whether immediate relief in state court would be available upon re-certification is not clear.

As to the second prong, it is not necessary that a recurrence of the dispute is more probable than not, but only that there is a reasonable expectation or a demonstrated probability of reoccurrence.  *See Honig v. Doe*, 484 U.S. 305, n. 6 (1988) (noting that the Supreme Court has found controversies capable of repetition based on expectations that, while reasonable, were hardly demonstrably probable in numerous cases).  However, more than "mere speculation" is required to show that the dispute will recur.  *Van Allen v. Cuomo*, 621 F.3d 244, 247 (2d Cir. 2010) (citing *Van Wie v. Pataki,* 267 F.3d 109, 115 (2d Cir. 2001)).  In her opposition to the motion to dismiss, Ms. Adams argues that she "lost her passport before.  It is reasonably foreseeable that it will happen again."  ECF No. 40 at 13.  She attributes that likelihood to "the challenges that she faces related to memory and executive functions."  *Id.*

While the Court acknowledges Ms. Adams reported limitations, the prospect of again losing her passport is highly speculative.

The Second Circuit has explained, where "the repetition of the events giving rise to the preliminary injunction is entirely speculative, the mere 'theoretical possibility' that this scenario will arise again is not sufficient for the capable of repetition exception to apply." *Haley v. Pataki*, 60 F.3d 137, 141 (2d Cir. 1995) (citing *Fox v. Board of Trustees*, 42 F.3d 135, 140 (2d Cir. 1994)); *cf. City of Los Angeles v. Lyons*, 449 U.S. 934, 936 (1980) (for purposes of equitable relief, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy"). Ms. Adams alleges in her Amended Complaint that she wants to find and retain work as a flight attendant. Such work requires a valid passport. Accordingly, maintaining possession of a passport will be more critical for Ms. Adams than for those who are not employed by an airline or engaged in regular international travel. For her to now allege that she is likely to lose such a precious document because of mental infirmities is highly conjectural and speculative.

At some point in the future Ms. Adams's current passport will expire. The Court takes judicial notice of the fact that an adult passport is valid for a period of ten years. *See* 22 U.S.C. § 217a. Whether Ms. Adams will still be in arrears on her child support in 2023, or whether she will have received any sort of relief with respect to that arrearage, are again subject to pure

conjecture and speculation.[2]  As such, they do not support an
order for injunctive relief against the Vermont Defendants as
requested in the Amended Complaint.  Count II of the Amended
Complaint is therefore dismissed without prejudice.

## II.  Keith Horton's Motion to Dismiss

The next dispositive motion before the Court is Commissioner
Keith Horton's motion to dismiss.  The motion argues insufficient
service of process, lack of personal jurisdiction, lack of
subject matter jurisdiction, Eleventh Amendment and sovereign
immunities, *res judicata*, statute of limitations, and failure to
state a claim upon which relief may be granted.  The Court will
first addresses the question of personal jurisdiction.  *See Mende
v. Milestone Tech., Inc.*, 269 F. Supp. 2d 246, 251 (S.D.N.Y.
2003) (citing *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 221
(2d Cir. 1963) ("[L]ogic compel[s] initial consideration of the
issue of jurisdiction over the defendant – a court without such
jurisdiction lacks power to dismiss a complaint for failure to
state a claim.")).

On a motion to dismiss pursuant to Federal Rule of Civil

---

[2]  Ms. Adams's claims of potential future harm by the State
of Vermont may be more appropriately barred as unripe rather than
moot.  *See National Org. for Marriage, Inc. v. Walsh*, 714 F.3d
682, 687 (2d Cir. 2013) ("A claim is not ripe if it depends upon
contingent future events that may not occur as anticipated, or
indeed may not occur at all.") (internal quotation marks
omitted).  In any event, the Court cannot consider them at this
time.

—

Procedure 12(b)(2), the plaintiff bears the burden of establishing personal jurisdiction. *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012). Prior to discovery, a plaintiff may defeat a 12(b)(2) motion to dismiss for lack of personal jurisdiction by "pleading in good faith, legally sufficient allegations of jurisdiction . . . . [T]he [P]laintiff's *prima facie* showing may be established solely by allegations." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013) (explaining "sliding scale" of review for 12(b)(2) motions) (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)). The Court may consider pleadings and affidavits, and construes them in the light most favorable to the plaintiff. *Id.* at 84-85.

To meet her burden, Ms. Adams must plead facts sufficient to support a finding that personal jurisdiction is proper under Vermont's long-arm statute and the Due Process Clause of the Fifth and Fourteenth Amendments. *In re Roman Catholic Diocese of Albany*, 745 F.3d 30, 37-38 (2d Cir. 2014). Because Vermont's long-arm statute, 12 V.S.A. § 913(b), extends personal jurisdiction to the outer limits permitted by the federal Due Process Clause, the Court must analyze whether personal jurisdiction comports with due process. *Id.* at 38.

The Due Process Clause requires that a defendant "purposefully establishes minimum contacts within the forum State

12

. . . 'such that he should reasonably anticipate being haled into court there.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).  Once such minimum contacts are determined, the Court must decide whether the exercise of personal jurisdiction is reasonable and acceptable under "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Personal jurisdiction may be specific or general. "Specific jurisdiction exists when a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum; a court's general jurisdiction, on the other hand, is based on the defendant's general business contacts with the forum state and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567-68 (2d Cir. 1996) (quotation marks and citation omitted).  General jurisdiction is only appropriate where a party's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011); *see also In re Terrorist Attacks on September 11, 2001*, 714 F.3d 659, 674 (2d Cir. 2013) (explaining that because "general jurisdiction is not related to

13

the events giving rise to the suit, . . . courts impose a more stringent minimum contacts test"). In evaluating the strength of contacts with the forum, a court looks to the totality of the circumstances. *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010).

Here, Ms. Adams alleges that the Georgia Defendants directed certain activities toward her while she was in Vermont. Those activities included: (1) telephone calls from Georgia DCSS; (2) injuries as a result of certification to the passport denial program; and (3) attempts to garnish her wages while she was living in Vermont. With respect to telephone calls, Ms. Adams reports conversations with Georgia DCSS and Horton "related to child support payments" and her request for "a waiver from the Georgia Child Support Order so I could get my passport back and get a job as a flight attendant." ECF No. 40-1. As to specific contacts with Commissioner Horton, Ms. Adams avers that she spoke with him on the telephone on "at least one occasion in either 2011 or 2012." ECF No. 40-1.

Commissioner Horton first argues that these contacts do not support specific jurisdiction because they did not pertain to the certification process that is the subject of this suit. *See Metro. Life Ins.*, 84 F.3d at 567-68. Indeed, Ms. Adams has made clear that she is not challenging her child support obligation in this case. Moreover, certification took place in 2009, prior to

14

Ms. Adams's move to Vermont.

Furthermore, the Second Circuit has held that personal jurisdiction is generally not established by a single phone call. *See Fox v. Boucher*, 794 F.2d 34, 37 (2d Cir. 1986) ("It would offend 'minimum contacts' due process principles to force [the defendant], a Massachusetts resident, to litigate in a New York forum on the basis of one telephone call."). It is also unclear from Ms. Adams's affidavit who initiated the call. *See Sternberg v. Nathan*, 112 F.3d 505 (2d Cir. 1997) (holding that twenty-nine telephone calls were not sufficient to confer personal jurisdiction where plaintiff failed to allege that defendant initiated the calls). The minimal telephone contacts between Ms. Adams and Commissioner Horton are thus insufficient to establish personal jurisdiction.

Ms. Adams also claims that she suffered injuries in Vermont. In *Walden v. Fiore*, the U.S. Supreme Court recently made clear that while "a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties . . . . a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." 134 S. Ct. 1115, 1122 (2014). In other words, "[d]ue process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or

attenuated' contacts he makes by interacting with other persons affiliated with the State". *Id.* at 1123 (quoting Burger King Corp., 471 U.S. at 475).  In this case, the allegations are that Commissioner Horton contacted Vermont because Ms. Adams moved here.  Accordingly, any injury suffered in Vermont was a result of her actions, and not the Commissioner's affiliation with Vermont, and thus does not support specific jurisdiction.[3]

Even assuming, *arguendo,* that minimum contacts requirements are met, personal jurisdiction over Commissioner Horton would not be reasonable.  The Second Circuit applies the five-factor test established by the Supreme Court in *Asahi Metal Indus. Co. v. Superior Court of California* to assess the reasonableness of exercising jurisdiction over a defendant.  480 U.S. 102, 113 (1987); *see Metro. Life Ins. Co.*, 84 F.3d at 568 (citing *Asahi*).  These factors include "the burden on the defendant, the interests of the forum State . . . the plaintiff's interest in obtaining relief . . . the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies." *Asahi*, 480 U.S. at 113 (quoting *World-Wide Volkswagen Corp.*, 444 U.S. at 291).

---

[3]   With regard to garnishment of wages, Ms. Adams asserts that her wages were garnished from Delta Airlines.  Delta Airlines is a corporation headquartered in Atlanta, Georgia.  *See Bracewell v. Nicholson Air Servs., Inc.*, 748 F.2d 1499, 1501 (11th Cir. 1984).

16

The burden upon Commissioner Horton to attend trial in Vermont would be significant.  While other factors may weigh slightly in favor of Vermont, the final factor invokes concerns of federalism and comity between the states.  Under this final factor, courts have held it unreasonable for a state to exercise jurisdiction over officials or agencies of another state based on actions they have taken to enforce a valid state court order. *Brown v. Reese*, 2013 WL 525354, at *7 (D. Ariz. Feb. 11, 2013) (holding that, other factors aside, it would be unreasonable to exercise jurisdiction over Georgia DHS and officials for efforts to compel child support payments from plaintiff in Arizona); *Payne v. Cty. of Kershaw*, 2008 WL 2876592, at *5 (N.D. Tex. July 25, 2008) (exercising jurisdiction over out-of-state officials based on efforts to garnish wages for spousal support would be unreasonable because it would expose such officials to litigation throughout the country).  Commissioner Horton's motion to dismiss is therefore **granted** for lack of personal jurisdiction.

## III. Georgia DCSS

The Georgia DCSS, though represented by counsel, has not filed either an answer to the Amended Complaint or a motion to dismiss.  Commissioner Horton's motion to dismiss was filed "in his official capacity as Commissioner of the Georgia Department of Human Services and for its Division of Child Support Services," but asks only for dismissal of "all claims that are

17

asserted against him in the Amended Complaint."  ECF No. 46 at 1,
10.  The motion to dismiss does not seek dismissal of the Georgia
DCSS.  Nor is it clear whether the Court can dismiss the Georgia
DCSS *sua sponte* on the grounds raised in Commissioner Horton's
motion to dismiss, including arguments for Eleventh Amendment
and/or sovereign immunity.  *See Woods v. Rondout Valley Cent.
School Dist. Bd. of Educ.*, 466 F.3d 232, 237-38 (2d Cir. 2006)
(holding that burden of proving entitlement to Eleventh Amendment
immunity is on the party asserting such immunity, and that the
Supreme Court has not yet determined whether the Eleventh
Amendment presents a question of subject matter jurisdiction).
The Georgia DCSS shall therefore file an appropriate responsive
pleading or motion within twenty days of this Opinion and Order.

### Conclusion

For the reasons set forth above, the motions to dismiss
filed by the Vermont OCS and Commissioner Yacavone (ECF No. 37)
and by Commissioner Keith Horton (ECF No. 36) are **granted**, and
the claims against those Defendants are dismissed without
prejudice.  The Georgia DCSS shall respond to the Amended
Complaint within twenty days of this Opinion and Order.

Dated at Burlington, in the District of Vermont, this 6th
day of March, 2015.

/s/ William K. Sessions III
William K. Sessions III
District Court Judge