```
                   UNITED STATES DISTRICT COURT
                           FOR THE
                      DISTRICT OF VERMONT

BAHJI AMELIA ADAMS,             :
                                :
     Plaintiff,                 :
                                :
          v.                    :    Case No. 2:13-cv-10
                                :
GEORGIA DIVISION OF CHILD       :
SUPPORT SERVICES,               :
                                :
     Defendant.                 :
```

**OPINION AND ORDER**

Plaintiff Bahji Amelia Adams brings this action claiming Defendant Georgia Department of Child Support Services ("Georgia DCSS") denied her due process and violated her rights under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act.  Now before the Court is the Georgia DCSS's motion to dismiss.  The motion raises several arguments for dismissal, including insufficient services of process; lack of personal jurisdiction; lack of subject matter jurisdiction; Eleventh Amendment immunity; statute of limitations; and failure to state a claim.  For the reasons set forth below the motion to dismiss is **granted**, the Georgia DCSS is dismissed without prejudice, and this case is closed.

**Factual Background**[1]

The Amended Complaint alleges that Ms. Adams is disabled, and that the failure of government officials to accommodate her

---

[1] These facts were set forth in the Court's previous Opinion and Order docketed on March 24, 2015, and are largely repeated here.

disabilities caused her financial harm.  Her disabilities are the result of a 2003 automobile accident in which she suffered a traumatic brain injury.  A psychological evaluation conducted in 2005 concluded that Ms. Adams is impaired in her ability to follow directions, perform multiple tasks, work at a reasonable pace, and function interpersonally.[2]  She also allegedly suffers from chronic lower back pain, cervical spine pain, and migraines.

In August 2005, Ms. Adams filed a complaint in Georgia Superior Court seeking a divorce from her husband, Adam George.  In the course of that proceeding, Ms. Adams, at times proceeding *pro se*, made requests for accommodations because of her inability to process the information required for litigation.  She alleges that the state court failed to address her requests and never properly considered her need for accommodations.  In November 2007, the state court awarded sole legal and physical custody of the couple's son to Mr. George and ordered Ms. Adams to pay child support in the amount of $601 per month.

Ms. Adams subsequently filed suit against various parties, including her ex-husband and state officials, in the United States District Court for the Northern District of Georgia.  *See Adams v. Georgia,* 2007 WL 4979007, at *1 (N.D. Ga. Nov. 27, 2007); *Adams v. Georgia*, 2008 WL 649179, at *1 n.1 (N.D. Ga. Mar.

---

[2]  Ms. Bryant initiated this case *pro se*, but in light of her representation that she is "legally incompetent" the Court appointed counsel pursuant to Fed. R. Civ. P. 17(c).

5, 2008); *Adams v. State of Georgia*, No. 1:08-cv-280 (N.D. Ga. June 30, 2008).  Her claims included challenges to the state court proceedings on the basis of due process and ADA violations.  Each of those claims was dismissed.

Despite her physical and mental impairments, Ms. Adams has been able to work as a flight attendant.  She began work for Comair in November 2007, and continued until her furlough in December 2008.  She joined Comair again in July 2010, where she worked until a second furlough in January 2012.

In August 2010, Ms. Adams discovered that she was missing her passport.  When she tried to obtain a replacement, she learned that in June 2009 the State of Georgia had certified her to the U.S. State Department's Passport Denial Program due to her child support arrearage.  The Passport Denial Program is a joint venture by the state and federal governments, and can be applied to persons owing child support in an amount exceeding $2,500.  In Georgia, the program is implemented by the Georgia DCSS.

Ms. Adams claims that she did not receive timely notice from the State of Georgia with respect to her certification to the Passport Denial Program, and that Georgia's procedures for implementing passport denial do not take into consideration a person's disabilities or need for accommodations.  She ultimately found her passport, but continued to pursue the matter of certification because her passport was set to expire in 2012.

In September 2010, Ms. Adams forwarded a letter from her employer to the Georgia DCSS explaining that her employment required possession of a valid passport.  Georgia's procedures for implementing the Passport Denial Program allegedly provided an exemption where a passport is necessary in order to generate income.  The Amended Complaint alleges that Georgia state officials initially failed to act upon Ms. Adams's inquiry.  The Amended Complaint further alleges that because of the eventual expiration of her passport, she was unable to obtain work as a flight attendant after September 2012.

In January 2013, the Georgia DCSS informed Ms. Adams that if she disagreed with the stated debt amount she could request an administrative hearing.  Because of the limited basis offered for seeking review, Ms. Adams did not request a hearing.

Ms. Adams moved to Vermont in 2010.  In March 2013, the Vermont Office of Child Support ("Vermont OCS") filed a Registration of Foreign Support Order to enforce the Georgia Superior Court's child support order.  The Vermont OCS also notified Ms. Adams of her child support arrearage and its own intent to certify her to the Passport Denial Program.  The Georgia DCSS ceased its enforcement activities in December 2013, and the Vermont OCS is currently the only agency enforcing Ms. Adams's child support obligations.

Ms. Adams filed suit in this Court on January 16, 2013.  On

4

May 14, 2013, a Vermont Superior Court registered the Georgia child support order and ruled that if Ms. Adams made a $500 payment toward her arrearage, her passport restrictions would be released.  Ms. Adams obtained a new passport in October 2013.

The Amended Complaint sets forth claims under the ADA, Section 504 of the Rehabilitation Act, and the Due Process Clause.  In Count I, Ms. Adams alleges that the Georgia DCSS and its Director Keith Horton failed to take her disabilities into account when they certified her to the Passport Denial Program.  By failing to modify their procedures or provide other accommodations, those Defendants allegedly deprived Ms. Adams of the opportunity to gain meaningful employment.  Commissioner Horton has been dismissed from the case for lack of personal jurisdiction.

In Count II, Ms. Adams claims that the Vermont OCS and Commissioner David Yacavone similarly failed to take her disabilities into account.  Both the Vermont OCS and Commissioner Yacavone have been dismissed from this case, and Ms. Adams concedes that Count II is no longer at issue.  Count III claims that the Georgia DCSS and Commissioner Horton failed to provide due process before certifying Ms. Adams to the Passport Denial Program.

For relief, the Amended Complaint seeks an injunction on any further denials, revocations, or restrictions on Ms. Adams's

passport; an injunction on further certification to the Passport Denial Program without considering the need for reasonable accommodations; judgment against the Georgia DCSS in the amount of $100,000; and attorney's fees.

## Discussion

Of the several grounds for dismissal raised by the Georgia DCSS, the Court will first address the question of personal jurisdiction. *See Mende v. Milestone Tech., Inc.*, 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003) (citing *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 221 (2d Cir. 1963) ("[L]ogic compel[s] initial consideration of the issue of jurisdiction over the defendant – a court without such jurisdiction lacks power to dismiss a complaint for failure to state a claim.")). On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing personal jurisdiction. *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012). Prior to discovery, a plaintiff may defeat a 12(b)(2) motion to dismiss for lack of personal jurisdiction by "pleading in good faith, legally sufficient allegations of jurisdiction . . . . [T]he [P]laintiff's *prima facie* showing may be established solely by allegations." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013) (explaining a "sliding scale" of review for 12(b)(2) motions) (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d

194, 197 (2d Cir. 1990)).  The Court may also consider pleadings and affidavits, and construes them in the light most favorable to the Plaintiff.  *Id.* at 84-85.

To meet her burden, Ms. Adams must plead facts sufficient to support a finding that personal jurisdiction is proper under Vermont's long-arm statute and the Due Process Clause of the Fifth and Fourteenth Amendments.  *In re Roman Catholic Diocese of Albany*, 745 F.3d 30, 37–38 (2d Cir. 2014).  Because Vermont's long-arm statute, 12 V.S.A. § 913(b), extends personal jurisdiction to the outer limits permitted by the federal Due Process Clause, the Court must analyze whether personal jurisdiction comports with due process.  *Id.* at 38.  The Due Process Clause requires that a defendant "purposefully establish[] minimum contacts within the forum State . . . 'such that he should reasonably anticipate being haled into court there.'"  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).  Once such minimum contacts are determined, the Court must decide whether the exercise of personal jurisdiction is reasonable and acceptable under "traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Personal jurisdiction may be specific or general.  "Specific jurisdiction exists when a State exercises personal jurisdiction

over a defendant in a suit arising out of or related to the defendant's contacts with the forum; a court's general jurisdiction, on the other hand, is based on the defendant's general business contacts with the forum state and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567–68 (2d Cir. 1996) (quotation marks and citation omitted).

Here, the focus is on specific jurisdiction. Ms. Adams has submitted two affidavits in support of her contention that the Court has personal jurisdiction over the Georgia DCSS. In the first, she attests that after moving to Vermont in 2010 she was called "several times by individuals at the [Georgia DCSS] related to child support payments." ECF No. 40-1 at 1. In one such conversation she allegedly spoke with Commissioner Horton about the alleged denial of due process, and her request for "a waiver from the Georgia Child Support Order so [she] could get [her] passport back and get a job as a flight attendant." *Id.* In her second affidavit, Ms. Adams states that "on at least one occasion" Commissioner Horton called her at home in Vermont and discussed both the "passport and alleged arrears." ECF No. 49-1.

Commissioner Horton has been dismissed from this case for lack of personal jurisdiction. In doing so, the Court found that "[t]he minimal telephone contacts between Ms. Adams and

Commissioner Horton are . . . insufficient to establish personal jurisdiction." *Id.* The Court also found that according to both recent and longstanding U.S. Supreme Court precedent, injuries suffered in the forum state do not necessarily qualify as contacts between that state and the defendant. The Court further noted that the burden upon Commissioner Horton of attending trial in Vermont would be significant.

Turning to the present motion, Ms. Adams's allegations with regard to the Georgia DCSS are quite similar to those asserted against the Commissioner. While her initial affidavit suggests that she has had several telephone calls with Georgia DCSS personnel while living in Vermont, those calls pertained to "child support payments." ECF No. 40-1 at 1. Ms. Adams has made clear, however, that she is not challenging her child support obligations in this litigation. Accordingly, those conversations did not either "arise out of" or "relate to" her current legal claims. *See Metro. Life Ins. Co.*, 84 F.3d at 567–68.

Ms. Adams claims that the Georgia DCSS denied her due process and failed to consider her disabilities when it certified her to the Passport Denial Program in 2009. She was not living in Vermont at that time. Accepting all of her allegations in the Amended Complaint and subsequent affidavits as true, most of her Vermont contacts with the Georgia DCSS pertained to child support payments. Again, the grounds for those payment obligations are

9

not being challenged in this litigation.

The allegations that Ms. Adams spoke with Commissioner Horton on "at least" one occasion about her passport are insufficient, for the reasons set forth in the Court's prior opinion. *See Fox v. Boucher*, 794 F.2d 34, 37 (2d Cir. 1986) ("It would offend 'minimum contacts' due process principles to force [the defendant], a Massachusetts resident, to litigate in a New York forum on the basis of one telephone call."). Moreover, contacts between the Georgia DCSS and the State of Vermont were exclusively the byproduct of Ms. Adams's move, and had nothing to do with any effort by the State of Georgia to avail itself of Vermont's laws.[3]

In *Walden v. Fiore*, the U.S. Supreme Court made clear that while "a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties . . . . a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." 134 S. Ct. 1115, 1122 (2014). In other words, "[d]ue process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or

---

[3] With regard to garnishment of wages, Ms. Adams asserts that her wages were garnished from Delta Airlines. Delta Airlines is a corporation headquartered in Atlanta, Georgia. *See Bracewell v. Nicholson Air Servs., Inc.*, 748 F.2d 1499, 1501 (11th Cir. 1984).

attenuated' contacts he makes by interacting with other persons affiliated with the State". *Id.* at 1123 (quoting *Burger King Corp.*, 471 U.S. at 475). In this case, Ms. Adams alleges that Commissioner Horton and the Georgia DCSS contacted Vermont because she moved here. Any injury suffered in Vermont was a result of her unilateral actions, and not the Georgia DCSS's affiliation with Vermont, and thus does not support specific jurisdiction.

Even assuming, *arguendo*, that minimum contacts requirements were met, personal jurisdiction over the Georgia DCSS would not be reasonable. As this Court discussed in the dismissal of Commissioner Horton, the Second Circuit applies a five-factor test established by the Supreme Court in *Asahi Metal Indus. Co. v. Superior Court of California* to assess the reasonableness of exercising jurisdiction over a defendant. 480 U.S. 102, 113 (1987); *see Metro. Life Ins. Co.*, 84 F.3d at 568 (citing *Asahi*). These factors include "the burden on the defendant, the interests of the forum State . . . the plaintiff's interest in obtaining relief . . . the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies." *Asahi*, 480 U.S. at 113 (quoting *World-Wide Volkswagen Corp.*, 444 U.S. at 291).

Here, the burden upon employees of the Georgia DCSS to

attend trial in Vermont would, as the Court ruled previously with regard to the Commissioner, be significant.  Vermont's interest in child support payments due in Georgia has been addressed in state court.  Furthermore, the State of Vermont has shared, if not overtaken, responsibility for collecting on Ms. Adams's overdue payments, and there is no indication that the transfer of such enforcement has been inefficient.

Finally, courts have held it unreasonable for a state to exercise jurisdiction over officials or agencies of another state based on actions they have taken to enforce a valid state court order.  *Brown v. Reese*, 2013 WL 525354, at *7 (D. Ariz. Feb. 11, 2013) (holding that, other factors aside, it would be unreasonable to exercise jurisdiction over Georgia DHS and officials for efforts to compel child support payments from plaintiff in Arizona); *Payne v. Cty. of Kershaw*, 2008 WL 2876592, at *5 (N.D. Tex. "July 25, 2008) (exercising jurisdiction over out-of-state officials based on efforts to garnish wages for spousal support would be unreasonable because it would expose such officials to litigation throughout the country).  Similarly, the Supreme Court has held that it would be unreasonable to assert jurisdiction over a party to a child support agreement merely because of the unilateral interstate movements of the opposing party.  *See Kulko v. Superior Court of Cal., City and County of San Francisco*, 436 U.S. 84, 93 (1978) (declining to

find personal jurisdiction over divorced husband "merely because [the plaintiff in a child support action] was residing there") (cited in *Walden*, 134 S. Ct. at 1122-23).

For these reasons, the Court finds that it lacks personal jurisdiction over the Georgia DCSS, and all claims against that Defendant are therefore **dismissed** without prejudice.

## Conclusion

The motion to dismiss filed by Defendant Georgia DCSS is hereby **granted** due to a lack of personal jurisdiction.  As all Defendants have now been dismissed from the case, this case is **closed**.

DATED at Burlington, in the District of Vermont, this 4th day of August, 2015.

/s/ William K. Sessions III
William K. Sessions III
United States District Court Judge